UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

GARRY L. CRAYTON                     PLAINTIFF

v.                      CIVIL ACTION NO. 3:17-CV-675-DW

COMMISSIONER OF SOCIAL SECURITY            DEFENDANT

## MEMORANDUM OPINION

  Plaintiff Garry L. Crayton has filed a complaint pursuant to 42 U.S.C. §405(g) to obtain judicial review of a final decision of the Commissioner of Social Security that denied his applications for disability insurance benefits (DIB) and supplemental security income (SSI). Crayton applied for SSI and DIB on Sept. 9, 2013 and Jan. 15, 2014, respectively, alleging that he was disabled as of July 15, 2012, due to left leg and hip problems, breathing issues, migraine headaches, vision limitations, limited literacy, arm muscle spasms, dizziness, and arthritis (Tr. 326, 332, 351). The Commissioner denied Crayton's claims on initial consideration (Tr.205, 213) and on reconsideration (Tr. 220, 227). Crayton requested a hearing before an Administrative Law Judge (ALJ) (Tr.).

  ALJ Candace A. McDaniel conducted two hearings in Louisville, Kentucky, one on November 17, 2015 and a second on June 21, 2106 (Tr. DN 82-116; DN 117-150 ). Crayton attended both hearings with his attorneys, Ms. Davis initially and then Mr. Cook (Id.). Both Crayton and the vocational experts (VE) Sharon Lane and Jeanie Deal testified at the two hearings, respectively (Tr. 107-115, 139-150). Following the conclusion of the hearings, ALJ McDaniel entered a hearing decision on August 1, 2016 that found Crayton is not disabled for the purposes of the Social Security Act (Tr. 60-75).

  In her adverse decision, ALJ McDaniel made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through Sept 30, 2013.

2. The claimant has not engaged in substantial gainful activity since July 15, 2012, the alleged onset date (20 C.F.R. 404.1571, *et seq.* and 416.971, *et seq.*).

3. The claimant has the following severe impairments: status/post bilateral total hip replacements, lumbar degenerative disc disease, and history of learning disorder/borderline intellectual functioning (20 C.F.R. 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except requires the ability to alternate at 30- to-60 minute intervals where the change takes no more than 1-to- 3 minutes without leaving the workspace; no climbing ladders, ropes, and scaffolds; no climbing stairs; could occasionally climb a ramp, stoop, crouch, crawl, and kneel; there would be no hazards which include unprotected heights or operation of the exposed moving machinery that cuts or grinds and fails to stop when human contact's loss; no concentrated exposure to vibration; occasional pushing/pulling with the left and right leg; can understand remember, and carry out simple routine tasks; can tolerate interaction with coworkers and supervisors, as needed for task completion; can interact appropriately with the public, but no more than occasionally; can maintain attention and concentration for two-hour segments throughout an eight-hour workday; and can tolerate routine changes in a work setting.

6. The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).

7. The claimant was born on June 5, 1963, and was 49-years-old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 C.F.R. 404.1563 and 416.963).

8. The claimant has a marginal education and is able to communicate in English (20 C.F.R. 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, App. 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569, 404.1569(a), 416.969 and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 15, 2012, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(Tr. 60-75). Crayton sought review of the hearing decision by the Appeals Council (Tr.50-56). The Appeals Council denied his request for review, finding no reason under the Rules to review ALJ McDaniel's decision (Tr. 37-43). The present lawsuit followed.

**The Five-Step Sequential Evaluation Process.**

Disability is defined by law as being the inability to do substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See, 20 CFR §§ 404.1505(a)(4), 416.905(a). To determine whether a claimant for DIB or SSI benefits satisfies such definition, a 5-step evaluation process has been developed. 20 CFR §§ 404.1520, 916.920(a). *Miller v. Commissioner*, 811 F.3d 825, 834 n. 6 (6th Cir. 2016)(" The ALJ must engage in a five-step sequential evaluation process to determine whether a claimant is disabled."). At step 1, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the Commissioner will find the claimant to be not disabled. See, 20 CFR §§ 404.1520(a)(4)(i), 416.920(a)(4)(ii), 416.971. *See, Gayhaeart v. Commissioner,* 710 F.3d 365, 374-75 (6th Cir. 2013)( "If claimant is doing

substantial gainful activity, he is not disabled."); *Dinkel v. Secretary*, 910 F2d, 315, 318 (6th Cir. 1990).

If the claimant is not working, then the Commissioner next must determine at step 2 of the evaluation process whether the claimant has a severe impairment or combination of severe impairments that significantly limit his or her ability to perform basic work activities. See 20 CFR §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *Gayheart,* 710 F.3d at 374("If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled."). If the impairments of the claimant are determined by the Commissioner to be non-severe, in other words, so slight that they could not result in a finding of disability irrespective of a claimant's vocational factors, then the claimant will be determined to be not disabled at step 2. *See, Rabbers v. Commissioner,* 582 F.3d 647, 652 (6th Cir. 2009); *Higgs v. Bowen*, 880 F.2d 960, 962 (6th Cir. 1988); *Gray v. Astrue,* 780 F. Supp.2d. 548, 550 (E.D. Ky. 2011)(" If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments—i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.")

If the claimant has a severe impairment or impairments, then the Commissioner at step 3 of the process will determine whether such impairments are sufficiently serious to satisfy the listing of impairments found in Appendix 1 of Subpart P of Part 404 of the federal regulations. 20 CFR §§ 404.1520(A)(4)(iii), 416.920(a)(4)(iii); *Rabbers*, 582 F.3d at 652. The claimant will be determined to be automatically disabled without consideration of his or her age, education or work experience if the claimant's impairments are sufficiently severe to meet or equal the criteria of any impairment listed in the Appendix. *See*, *Combs v. Commissioner*, 459 F.3d 640, 642 (6th

Cir. 2006)("Claimants are conclusively presumed to be disabled if they suffer from an infirmity that appears on the SSA's special list of impairments, or that is at least equal in severity to those listed."); *Lankford v. Sullivan*, 942 F.2d 301, 306 (6th Cir. 1991)(same).

When the severity of the claimant's impairments does not meet or equal the listings, then the Commissioner must determine at step 4 whether the claimant retains the residual functional capacity (RFC) given his or her impairments to permit a return to any of his or her past relevant work. 20 CFR §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). *See, Wilson v. Commissioner,* 378 F.3d 541, 458 (6th Cir. 2004); *Smith v. Secretary*, 893 F.2d 106, 109-110 (6th Cir. 1989). A claimant who retains the residual functional capacity, despite his or her severe impairments, to perform past relevant work is not disabled. 20 CFR §§ 404.1560(b)(3), 416.960(b)(3). *Mackins v. Astrue*, 655 F. Supp.2d 770, 776 (W.D. Ky. 2009)(" The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.").

The burden switches to the Commissioner at step 5 of the sequential evaluation process to establish that the claimant, who cannot return to his or her past relevant work, remains capable of performing alternative work in the national economy given his or her residual functional capacity, age, education and past relevant work experience. See, 20 CFR §§ 404.1520(a)(4)(v), 404.1560( c ), 416.920(a)(4)(v), 416.960( c ); *Hensley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Cruse v. Commissioner*, 502 F.3d 532, 539 (6th Cir. 2007); *Wilson v. Commissioner*, 378 F.3d 541, 458 (6th Cir. 2004)(" If the claimant does . . . [satisfy the initial 4-steps], including establishing that under the claimant's "residual functional capacity the claimant can [not] perform his past relevant work," the burden then shifts to the Commissioner [at step 5] to show that "based on the claimant's residual functional capacity, as well as his age, education, and work

experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled.") . Collectively, the above disability evaluation analysis is commonly referred to as the "5-step sequential evaluation process."

**Standard of Review.**

Review of a decision of the Commissioner is governed by 42 U.S.C. § 405(g).  The statute, and case law that interprets it, require a reviewing court to affirm the findings of the Commissioner if they are supported by substantial evidence and the Commissioner has employed the appropriate legal standard.  *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir.2011)("[R]eview is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.'); *Walters v. Commissioner of Social Security*, 127 F.3d 525, 528 (6th Cir. 1997) ("This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.); *Dennis v. Astrue*, 655 F. Supp.2d 746, 749-50 (W.D. Ky. 2009)(same).

Substantial evidence is defined by the Supreme Court to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Lindsley v. Comm'r of Soc. Sec*., 560 F.3d 601, 604 (6th Cir.2009); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)(same).  *See also, Lashley v. Sec'y of HHS*, 708 F.2d 1048, 1053 (6th Cir. 1983) (citing *Perales*).  It is more than a mere scintilla of evidence or evidence that merely creates the suspicion of the existence of a fact, but must be enough evidence to justify a refusal to direct a verdict if the matter were tried to a jury.  *Sias v. Sec'y of HHS*, 861 F.2d 475, 479 n. 1 (6th Cir. 1988).

The substantiality of the evidence is to be determined based upon a review of the record taken as a whole, not simply some evidence, but rather the entirety of the record to include those portions that detract from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Laskowski v. Apfel*, 100 F. Supp.2d 474, 482 (E.D. Mich. 2000). So long as the decision of the Commissioner is supported by substantial evidence, it must be upheld by the federal court even if the record might support a contrary conclusion. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th. Cir. 2010); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir.2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)); *Smith v. Sec'y of HHS*, 893 F.2d 106, 108 (6th Cir. 1989). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).

**Issues for Consideration.**

Crayton in his Fact and Law Summary focuses his arguments first at step 3 of the sequential evaluation process on Listing 1.03 of the Listing of Impairments, which is related to the reconstructive surgery of a weight-bearing joint. (DN 13). Under this Listing a claimant will be found to be disabled if, following the reconstructive surgery of a major weight-bearing joint, he or she is unable to ambulate effectively and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset. 20 CFR Pt. 404, Subpt. P, App. 1, Listing § 1.03.

"Effective ambulation" is defined by, § 1.00B2b of the Listing of Impairments, which states:

> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities....
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping or banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of an assistive device does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00B2b. *See gen., Bingaman v. Commissioner of Social Security*, No. 05–6549, 2006 WL 1827616 at *3-4 (6th Cir. 2006) (claimant who had only a "slight limp," did not require a hand-held assistive device to walk, was able to perform household chores and to mow the lawn failed to satisfy the requirements of Listing 1.03).

Crayton argues that the ALJ in Finding of Fact No. 4 entirely failed to mention Listing 1.03 in her hearing decision. (TR 64-67). At most, the ALJ wrote at page 5 of her decision only that "the claimant does not have any impairment, which meets or medically equals any section of Appendix 1, including sections 1.00/1.02/1.04 or the mental impairments discussed below." (TR 64). Crayton points out that none of the state agency doctors considered Listing 1.03 either. (TR 182-84, 197-99). Further, the hearing decision as Crayton reads it does not define or even discuss the requirement of "effective ambulation" a vitally important aspect of Listing 1.03.

8

Crayton points out that his long-standing complaints of severe pain due to osteoarthritic bone-on-bone degeneration of his left and right hip joints, complaints confirmed by diagnostic imaging, were medically determined to warrant total hip replacement surgery originally scheduled for his left hip on November 19, 2014, but actually performed on January 13, 2015 due to medical insurance coverage issues. (TR 22). A second total hip replacement of his right hip followed four months later on May 15, 2015. (TR 563, 580). Both before and after these total hip replacement surgeries, the medical records according to Crayton repeatedly confirm that he experienced severe problems with effective ambulation and gait.

For example, Crayton points to emergency room doctor notes dated February 11, 2014 that indicate that Crayton's left hip pain was exacerbated by walking. (TR 498-99). The following months in March and April his gait was noted to be "antalgic."[1] (TR 614-15, 720) Similarly, on August 29, 2014 Crayton was noted to be walking with a limp that favored his right leg. (TR 625, 729). Physical therapy notes from September 2014 confirm problems with the gate, and the flexibility of his hips, knees and ankles. (TR 503-505). Crayton at that time was unable to walk even 300 feet without an assistive device and continued to exhibit Trendelenburg gait.[2] (Id.)

---

[1] An "antalgic gait [is characterized by] a limp adopted so as to avoid pain on weight-bearing structures, characterized by a very short stance phase." https://medical-dictionary.thefreedictionary.com/antalgic+gait (last visited on June 28, 2018). Similarly, "If bearing weight on a limb is painful, patients adopt an antalgic gait to minimize the pain. (Antalgic is from the Greek an and algesis, meaning "against pain.") All antalgic gaits are characterized by a short contralateral step, along with other characteristic features. After bearing weight on the affected leg, patients with pain quickly step onto the sound leg. The short contralateral step produces an uneven cadence, one identical to that produced by a rock in one shoe" https://www.sciencedirect.com/topics/veterinary-science-and-veterinary-medicine/antalgic-gait (last visited on June 28, 2018).

[2] The Trendelenburg gait pattern (or gluteus medius lurch) is an abnormal gait (as with walking) caused by weakness of the abductor muscles of the lower limb, gluteus medius and gluteus minimus. People with a lesion of superior gluteal nerve have weakness of abducting the thigh at the hip. https://en.wikipedia.org/wiki/Trendelenburg_gait (last visited on June 28, 2108).

Crayton maintains that after both of his total hip replacement surgeries in January and May of 2015 he attempted physical therapy without complete success. According to him, his gait remained antalgic and he continued to require the use of an assistive device in order to ambulate. His range of motion and strength were noted to be deficient, which along with a 1 inch difference in the length of his legs, contributed to his difficulty with walking. (TR 690-95). Crayton insists that his second round of physical therapy, from June 3-28 of 2015, likewise was less than fully effective. For example, Crayton points out that he failed to achieve his goal of normal ambulation for a distance of 1000 feet, but instead continued to walk very slowly with an antalgic gate taking a full 6 minutes to walk only 970 feet. He also then reported that he was not able to stand, clean, and cook without restrictions or to "complete walking for grocery shopping." (TR 697-98). By September 2015, Crayton reported increased radiating back and leg pain upon standing. (TR 754).

He now insists that his medical records clearly demonstrate not only the distinct possibility that he satisfied all of the criteria of Listing 1.03, but also those of Listing 1.02A, as well. To the extent that the ALJ in the later portions of her hearing decision at step 4 of the evaluation process (TR 67-73) cites selected portions of the medical records that suggest no problems existed with Crayton's gate during brief office visit examinations, Crayton contends that these isolated references "are contradicted by an overwhelming volume of continued clinical and imaging findings that evidence serious ambulation problems," which the ALJ did not resolve in the findings and conclusions of her hearing decision contrary to 20 CFR §§ 404.1546, 404.1527(c), 416.946 and 416.927(c); SSR 96-5p. (DN 13, p. 4).

Crayton also faults the decision of ALJ McDaniels for its failure not to consider whether he met the criteria of any listing under section 1.00 of the Listings for a closed 12-month period

10

of time. (DN 13,p. 5). On this issue, Crayton points out that the two consultative medical examinations extensively relied on by the ALJ were conducted first on October 30, 2013 by Dr. Barefoot (TR 477-485) and later by Dr. Carter on December 19, 2015 (TR 703-717), more than two years apart. Even assuming that these consultative medical examinations constitute substantial evidence in favor of the decision of the ALJ, Crayton argues that "there is no rationale [in the hearing decision] explaining why the laboratory tests and clinical findings in the interim did not meet [the requirements of] a Listing." (Id.).

The above-cited medical records according to Crayton demonstrate significant, ongoing ambulatory problems that seriously interfered with his ability to initiate, sustain or complete daily activities instead requiring medically necessary bilateral total hip replacements first prescribed in October 2014 and later rescheduled to January 2015 solely due to insurance coverage concerns. In other words, the medical evidence of record plainly demonstrates that Crayton during the interim between the consultative examinations relied on by the ALJ satisfied the criteria of Listing 1.03. Because the hearing decision of the ALJ did not mention, much less discuss whether Crayton was entitled, at a minimum, to a closed period of benefits, and because the hearing decision contains virtually no mention of Listing 1.03, much less any discussion of whether he met or medically equaled its criteria, Crayton now insists that the Court at the very least must remand the decision to the Commissioner so that the requirements of Step 3 of the sequential evaluation process can be properly considered.

Finally, Crayton emphasizes that the complete failure of the administrative hearing decision to mention, much less evaluate, whether he met or equaled the criteria of Listing 1.03 cannot constitute harmless error, as the Court cannot simply step into the shoes of the ALJ in an effort to construct in the first instance, rather than to evaluate the adequacy of, a required step of

the sequential evaluation analysis that simply was not performed below, contrary to the clear requirements of the controlling law.

Crayton in his second argument focuses on Finding of Fact No. 5. In this finding, the ALJ determined that despite the limitations imposed by his severe impairments, Crayton remained able to perform a limited range of light work as defined by 20 CFR §§ 404.1567(b) and 416.967(b). Light work under these regulations "involves lifting no more than 20 pounds of the time with frequent lifting or carrying of objects weighing up to 10 pounds" along with "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of the arm or leg controls." *Id*. For a claimant "to be considered capable of performing a full or wide range of light work, [he or she] must have the ability to do substantially all of these activities." *Id*.

Crayton now insists that substantial evidence simply does not support the finding that he was able to perform even a limited range of light work between October 30, 2013 and December 19, 2015, a time period that exceeds 12 months. Crayton protests that nowhere in the hearing decision does the ALJ explain how, given the above-discussed medical records, he could sustain such work given his history of bilateral, total hip replacements in January and June 2015 followed by periods of physical therapy that failed to return him to effective ambulation as evidence by the fact that he could not walk 1000 feet in six minutes (TR 697-98 ). Crayton continues that his surgical history, combined with his medically documented deteriorating low back condition, leg length discrepancy, and ongoing pain treatment during this time frame precluded even a limited range of light work. Consequently, he concludes that Finding No. 5 is not supported by substantial evidence.

**Finding of Fact No. 4**

The Plaintiff bears the burden of proof at step 3 of the sequential evaluation process to demonstrate that he meets or equals all of the criteria of an impairment listed in Appendix 1. *See Arnold v. Comm'r of Soc. Sec.*, 238 F.3d 419 (table), 2000 WL 1909386, at *2 (6th Cir. Dec.27, 2000)). As the U.S. Supreme Court has explained, "[a]n impairment that meets only some of the [specified medical] criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530-532, 110 S.Ct. 885, 107 L.Ed.2d 967(1990). If the plaintiff does demonstrate that her impairment meets or equals a listed impairment, then the ALJ "must find the [plaintiff] disabled." *Buress v. Sec 'y of Health & Human Servs*., 835 F.2d 139, 140 (6th Cir.1987).

It will not be sufficient, however, for the ALJ merely to state in a conclusory fashion that the proof offered by the claimant does not meet or medically equal the criteria of a listed impairment without analysis or any citation or discussion of the evidence and conflicts in the evidence that relate to the listed impairment at issue. *Evans ex rel. DCB v. Comm'r of Soc. Sec*., No. 11-CV-11862, 2012 WL 3112415, at *8–11 (E.D. Mich. Mar. 21, 2012), *report and recommendation adopted,* No. 11-11862, 2012 WL 3112316 (E.D. Mich. July 31, 2012). In other words, a bald declaration that a claimant does not have an impairment or combination of impairments that meet or medically equal any of the listed impairments of Appendix 1 is "completely inadequate." *Weisgarber v. Colvin*, No. 3:13-CV-426-TAV-CCS, 2014 WL 3052488, at *4–5 (E.D. Tenn. July 3, 2014) (citing *Reynolds v. Commissioner of Social Security* 424 Fed. App'x. 411, 415-16 (6th Cir. 2011)(The ALJ must "actually evaluate the evidence, compare it to ... the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review." Failure to do so makes it "impossible to say that the ALJ's decision at Step Three was supported by substantial evidence."). Merely to declare without more that all of the

listings under consideration have been considered and found not to have been met or medically equaled "is precisely the opposite of what is required by *Reynolds*." *Weisgarger,* 2014 WL 3052488 at *5.

Sixth Circuit case law repeatedly supports the remand of those disability decisions "where an ALJ fails to determine whether a medically determinable impairment meets or equals a listed impairment at step three." *Hobson v. Comm'r of Soc. Sec.,* No. 3:14-CV-2576, 2016 WL 1436143, at *2–3 (N.D. Ohio Apr. 12, 2016)(citing *Reynolds, supra*, and *Weisgarger,* 2014 WL 3052488 at *5). *See also Solesbee v. Astrue*, No. CIV.A. 2:10-1882-RMG, 2011 WL 5101531, at *4 (D.S.C. Oct. 25, 2011)(same); *Morgan v. Astrue*, No. CIV.A. 10-207-KSF, 2011 WL 2292305, at *7 (E.D. Ky. June 8, 2011)(same) .

Further, errors of that nature, where the ALJ has skipped a required step by failing to analyze the claimant's physical condition in relation to an otherwise applicable, listed impairment, ordinarily will *not* be held to be harmless error, particularly when the regulations indicate that if the claimant was found to meet the criteria of the unmentioned listing he or she would be determined to be disabled without further consideration of the remaining steps in the evaluation process.  20 C.F.R. § 404.1520(a)(4)(iii); *Reynolds*, 424 Fed. App'x. at 416 ("If the ALJ had properly analyzed Step Three, and had found Reynolds met Listing 1.04, she would receive benefits regardless of what the ALJ's conclusion would have been at Steps Four and Five."); *Christephore v. Comm'r of Soc. Sec.,* No. 11-13547, 2012 WL 2274328, at *6–10 (E.D. Mich. June 18, 2012)(discussing *Reynolds*). *See, Miaun v. Colvin*, No. 3:14-CV-222-TAV-HBG, 2015 WL 2248750, at *11 (E.D. Tenn. May 12, 2015)(collecting similar case law).

Without the ALJ actually evaluating the evidence, comparing it to the criteria of the affected listing and providing an explained conclusion, meaningful judicial review cannot occur

and it becomes "impossible to say that the ALJ's decisions at Step Three was supported by substantial evidence." *Id*.  Indeed, we have just recently ourselves relied on exactly such reasoning and case authority in a separate, unrelated disability action to order a case remanded to the Commissioner where the ALJ failed to consider a relevant listing in his analysis of the Plaintiff's disability claim.  *See Bartolomei v. Berryhill*, No. 3:17CV-00042-DW, 2017 WL 4897527, at *7 (W.D. Ky. Oct. 30, 2017)(" Because ALJ Nichols failed to mention Listing 12.05, much less implicitly analyze each requirement of the Listing otherwise in his decision, the Court finds a remand is necessary to allow the ALJ the opportunity to meaningfully consider this issue.").  We similarly now conclude that a remand is required, given that the record in the present case "raises a substantial question" as to whether the claimant could qualify as disabled under Listing 1.03.  *See Combs v. Colvin*, No. CV 15-104-DLB, 2016 WL 1301123 at *4 (E.D. Ky. Apr. 1, 2016).

In other words, we cannot confidently conclude, based on our own review, that such an error is harmless.  Only where 'concrete factual and medical evidence is apparent in the record and shows that even if the ALJ had a made the required findings, the ALJ would have found the claimant not disabled…" will the failure of the ALJ to consider a particular Listing and its criteria at Step 3 be held harmless. *See, Jaeger v. Comm'r of Soc. Sec*., No. CV 16-14447, 2017 WL 4936023 at *4 (E.D. Mich. Oct. 5, 2017)(quoting *M.G. v. Comm'r of Soc. Sec*., 861 F. Supp. 2d 846, 858-59 (E.D. Mich. 2012)). That simply is not the case here.

To the contrary, the medical evidence in the present case raises a serious question of whether Crayton satisfied the criteria of Listing 1.03, or at a very minimum was entitled to a closed period of disability at Step 5 of the sequential evaluation process. Crayton in his Fact and Law Summary accurately cites thoroughly documented evidence of ongoing complaints of

severe pain related to degenerative osteoarthritis in the hips, which necessitated bilateral hip replacements, accompanied by recurrent efforts at physical therapy, which documented ongoing substantial difficulty ambulating, even with the help of a prescribed assistive device. Crayton also points to well-documented lower back pain related to a herniated disc in the lumbar spine combined with ongoing spinal stenosis, as well as, degenerative osteoarthris in his knees. The cited medical records are not so one-sided that we can say with any confidence that Crayton could not prevail on his claim at Step 3 or at step 5 of the sequential evaluation process.

While the Commissioner attempts in the first instance in her Fact and Law Summary (DN 16) to show that the Plaintiff did not meet his burden at Step 3 to satisfy the criteria of Listing 1.03 such arguments are essentially an attempt to "reverse engineer" a hearing decision to correct the failure of the ALJ to conduct a proper analysis of the affected Listing. Further, we note that the Commissioner in her efforts to "recreate what had yet to be created" repeatedly relies on the findings made in subsequent steps in the sequential evaluation process. This approach simply does not get past the unavoidable problem that the hearing decision contains no findings related to, nor even any mention of, Listing 1.03 or consideration of whether Crayton is entitled to a closed period of benefits.

We therefor decline the offer of the Commissioner to reverse engineer a hearing decision in compliance with 20 CFR §§ 404.1520(A)(4)(iii) and 416.920(a)(4)(iii) where the evidence presented is not so one-sided that we can say with any confidence that Crayton's severe impairments related to his multiple hip surgeries, knee and back problems did not meet or equal the criteria of the disputed listing. The case must be vacated and remanded pursuant to sentence 4 of 42 U.S.C. 405(g) so that the failure of the Commissioner to consider Listing 1.03 can be addressed in the first instance by the ALJ below. *Melkonyan v. Sullivan*, 501 U.S. 89 (1991);

*Turner v. Comm'r*, 680 F.3d 721, 723 (6th Cir. 2012)( The fourth sentence of § 405(g) gives the district court the power to "enter ... a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing," known as a "sentence-four remand." On sentence-four remand, the administrative law judge retains the discretion to grant or deny a benefits award. *Shalala v. Schaefer*, 509 U.S. 292, 304, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993) (Stevens, J., dissenting)). A separate final order to this effect shall be entered by the Court.[3]

Cc: counsel of record

---

[3] Because we resolve the matter at step 3, we need not yet address Crayton's second, and substantial, argument related to the subsequent finding of facts at step 5 and the possibility that he is at least entitled to a closed period of benefits at step 5 if not step 3.